**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

UNITED STATES,

    Plaintiff,

v.

HECTOR REYNOSO,

    Defendant.

No.  CR 07-00409 SBA

**ORDER**

[Docket Nos. 63, 64, 65]

Before the Court is Defendant's Motion to Dismiss/Request for Bill of Particulars [Docket No. 63], Motion for the Disclosure of Brady Materials and Early Production of Jencks Material [Docket No. 64], Motion for Pretrial Production of Evidence Admissible to Attack the Credibility of Co-Conspirators [Docket No. 65], the Government's Consolidated Response to the motions [Docket No. 69], and Defendant's Reply [Docket No. 70].

After reading and considering the papers presented, and for the reasons stated in this order, the Court DENIES the Motions.

**BACKGROUND**

The defendant is charged in two counts of the two-count Superseding Indictment: Count One for the Conspiracy to Possess with the Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846 and Count Two for the Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

The indictment names two other defendants: Joel Sanchez and Alfredo Sanchez. The conspiracy is charged to have begun no later than on or about May 31, 2007 and continued until on or about May 31, 2007.

According to the Government, the facts are straightforward. DEA agents and a confidential informant arranged a 5 pound methamphetamine deal with a person known as Joel Sanchez. On the day of the deal, May 31, 2007, the DEA agents followed Joel Sanchez to an address in San Leandro. Joel Sanchez got out of his car, empty-handed, and got into a white Camry that was parked in the

driveway of an apartment complex. The driver of the white Camry was Alfredo Sanchez. Another passenger, Juan Carlos Zepeda-Gonzales, was observed. The car remained parked for several minutes.

The DEA agents followed the Camry to a gas station at 166th and E. 14th Street in San Leandro. One or two individuals were observed getting out of the Camry, and they were later identified as Omar Perez and the defendant. After the transaction occurred, three people were arrested, but not Reynoso. Some weeks later, after Reynoso's fingerprints were allegedly discovered on the packaging of the drugs, the original indictment was superseded to add Reynoso to the existing charges. [Govt's Response, p. 2].

According to the Government, Reynoso was questioned and released on the basis of having allegedly told the police that he and Perez had been dropped off in the area by two girls, were waiting for Reynoso's cousin to pick them up, worked construction in Turlock, had never been arrested, and he did not know Joel Sanchez.

## ANALYSIS

### I.     Motion to Dismiss the Indictment or, in the alternative, request a Bill of Particulars.

#### A.     Motion to Dismiss

The defendant argues that the conspiracy count is impermissibly vague because it (1) fails to provide him with notice of the particular manner and means by which the purported "conspiracy" operates, (2) does not allege "any specific acts" taken in furtherance of the conspiracy and (3) does not give information about the roles of the alleged co-conspirators. [Motion, p. 2-3].

The defendant contends that a drug conspiracy must charge the manner and means of the conspiracy with specificity to avoid being found impermissibly vague, and cites to *U.S. v. Whitehorn*, 710 F.Supp. 803, 817 (D.D.C. 1989). *Whitehorn* involved a conspiracy to overthrow the Government and the Court upheld the indictment against an attack as impermissibly vague because it was specific as to the goal of conspiracy, the manner and means used, and specific overt acts committed by specific defendants in furtherance of the conspiracy. 710 F.Supp. 803, 817 (D.D.C.1989). The case, reversed on other grounds, never dealt with the question of whether an conspiracy indictment *must* allege the manner and means and specific overt acts in order to sustain a

1  motion to dismiss because the indictment was found to be very specific.  *Whitehorn* instructs that
2  specificity is clearly an advantage to a vagueness challenge, but does not instruct that specificity is
3  required.

4  On the other hand, in *U.S. v. Shabani*, 513 U.S. 10, 11 (1994), the defendant was charged
5  with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, the same charge against
6  defendant Reynoso.  "He moved to dismiss the indictment because it did not allege the commission
7  of an overt act in furtherance of the conspiracy, which act, he argued, was an essential element of the
8  offense."  According to the Supreme Court, the Ninth Circuit had been getting it all wrong when it
9  required the Government to prove the commission of any overt acts in furtherance of the conspiracy.
10 The Supreme Court instructed: What the Ninth Circuit failed to recognize we now make explicit: In
11 order to establish a violation of 21 U.S.C. § 846, the Government need not prove the commission of
12 any overt acts in furtherance of the conspiracy."

13 It is logical to read *Shabani* to mean that if the Government is not required to prove an overt
14 act in a drug conspiracy charge then it is not required to plead one either.  Reciting the statutory
15 elements is sufficient.  *Id*.  This is in contrast to a general conspiracy, where at least one overt act
16 must be plead in the indictment and proved by the government. *U.S. v. Garcia,* 151 F.3d 1243, 1245
17 (9th Cir. 1998).

18 The Court DENIES the motion to dismiss because it is not impermissibly vague.

19 B.     Bill of Particulars

20 In the alternative, the defendant requests the Government file a bill of particulars.  Fed. Rule
21 Crim. Pro. 7(c)(1) provides that "the indictment or information must be a plain, concise, and definite
22 written statement of the essential facts constituting the offense charged.

23 The defendant asks for the following information: (1) an allegation that he participated in the
24 overt act; (2) identification of all overt acts not identified in the indictment (including dates of,
25 locations of and participants in meetings and conversations; (3) dates, times, places at which the
26 defendant allegedly conspired with indicted and unindicted individuals; (4) the names of individuals
27 known to the Grand Jury but not named int eh indictment. [Motion, p. 4].

28 "Under [Rule 7(f) of] the Federal Rules of Criminal Procedure, it is within the sound

3

discretion of the court to determine whether a bill of particulars should be provided," and the Court should grant such motions when "necessary to prevent unfair surprise at trial." *U.S. v. Ramirez,* 54 F.Supp.2d 25, 29 (D.D.C.,1999)(internal citations omitted). "A bill of particulars is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence. It properly includes clarification of the indictment, not the government's proof of its case. *Id.*

*Ramirez* is a drug conspiracy case and the *Ramirez* judge disagreed with *Shabani* and declined to follow the rule, stating: [w]hile the government argues against a bill of particulars on the basis of these less stringent pleading requirements, this Court believes that the logic cuts the other way: A bill of particulars is all the more important in a narcotics conspiracy case because the indictment itself provides so little detail." *Id*. at 30. The judge in *Ramirez* permitted a bill of particulars that gave the dates of, locations of, and participants in meetings and conversations, and the dates, times and places at which the defendant was alleged to have conspired with the indicted co-conspirators. Reynoso asks for the same information in his motion. [Motion, p. 4].

The only Ninth Circuit case which makes reference to *Ramirez*, does not adopt its reasoning. The Ninth Circuit simply said that "[this] court recognizes that the statute and decisions cited in the *Ramirez* decision might provide some basis for Judge Zoss's conclusion that disclosure of "overt acts" in furtherance of a drug conspiracy is not required in a bill of particulars; however, the court need not consider that question, because Johnson has not appealed the portion of Judge Zoss's order denying her request for a bill."  *U.S. Johnson*, 225 F.Supp.2d 982, 994 (N.D.Iowa 2002).

The important distinction here is that the conspiracy charge in *Johnson* was for a continuing criminal enterprise and not a Section 846 narcotics conspiracy, as charged in the case before the Court. The Supreme Court's rule in *Shabani* is applicable because Reynoso is charged with participating in a drug conspiracy. There is no requirement that he be alleged to have participated in an overt act.

It is also acceptable for a defendant to be sufficiently informed through means other than the indictment. *U.S. Johnson*, 225 F.Supp.2d 982, 994 (N.D.Iowa 2002). "Satisfactory means" include a defendant having access to "open file" discovery, and the government providing in its brief in resistance to a motion for a bill of particulars answers to each of the defendant's specific questions

4

for clarification. *Id*. In this case, the AUSA states that "the government and the defense have discussed the evidence against Reynoso many times. Thus far, there have been no surprises here. The defendant's fingerprint was found on the packaging of 5 kilograms of methamphetamine and he lied to the agents when he talked to them." [Opp'n p. 5]. In addition, the summary of facts in the Government's brief also lists the day of the alleged conspiracy (as does the indictment), and the names of other individuals, both indicted and unindicted.

The Court DENIES the request for a bill of particulars because the indictment, and other information known to the defendant, provides him with sufficient notice to defend himself against the charge.

**II.     Motion to Compel**

A.     *Brady* material

The defendant argues for "timely disclosure" of *Brady/Giglio* material. In support of his motion, he attaches four (4) pages of "Specific Requests for Exculpatory Evidence" (for a total of 54 requests) of which he requests the Court to compel production. This list comprises all of the requests he appears to have made on October 27, 2008, only two weeks before filing this motion. [Def.'s Motion to Compel, Ex. F].

Nowhere in his motion does defense counsel state that (1) any of the material he wants is *Brady* material (2) which he requested of the Government on October 27, 2008, and (3) which has been withheld. He simply states that "the disclosures requested herein should be made immediately so that appropriate defense preparation can be made." [Motion, p. 7].

However, in his Reply, he identifies three specific pieces of evidence he wants produced: (1) the whereabouts of Juan Carlos Zepeda-Gonzales and the reason the Government did not indict him; (2) the identity of the person who gave the Government information about the alleged secret compartment in the Camry, most likely Mr. Gonzales, but possibly someone else; and (3) copies of the plea agreements for Joel Sanchez and Alfredo Sanchez.

According to the prosecutor, the Government is not withholding information. The prosecutor has responded to defense counsel about the whereabouts of Zepeda-Gonzales: he was "picked up by immigration." As for the purported plea agreements, the Goverment did not file a

sur-reply, but it is evident from the opposition brief that the Sanchez's "intend to plea" and likely that no plea agreement has yet been entered.

Defendant is particularly concerned about testimony by his co-conspirators and assumes they will testify. The Government informs the Court that neither Joel nor Alfredo Sanchez (who are named in the indictment and intend to plead) has been approached by the Government to testify at Reynoso's trial. [Opp'n, p.3 ]. Further, even though the defendant "assumes the Government will seek to admit co-conspirator statements," he never says what statements he is referring to. [Opp'n, p. 3].

The Government states that it has complied with its discovery obligations and it has no additional statements that pertain to the defendant. [Id.] Further, the Government made the case agent available to the defense counsel to expedite the discovery process and (2) defense counsel has met with the case agent and spoken to him on the telephone several times. If any *Brady* material is subsequently uncovered, the Government states that it will comply with the ongoing obligation to disclose it and provide it to the defendant.

On the face of the defendant's motion, there is no dispute to resolve because nothing specific has been requested and nothing specific has been denied. According to the Government, what *Brady* materials it has, it has disclosed, and there is nothing more. Consequently, the Court DENIES the motion to compel WITHOUT PREJUDICE.

2. *Jencks* materials

*Jencks* material is inculpatory evidence relied upon by the Government in prosecution of a criminal defendant, and pertains to statements by Government witnesses. The *Jencks* Act, 18 U.S.C. § 3500, contemplates not only the furnishing of the statement of a witness but a reasonable opportunity to examine it and prepare for its use in the trial. The Government is not required to produce the statement for the use of a defendant until after the witness has testified. However, the Court may order early disclosure in instances where there are many statements so as to avoid lengthy delays before the beginning of cross-examination. *U.S. v. Holmes*, 722 F.2d 37, 40 (1983).

The Government offers to provide *Jencks* statements one week before the trial is scheduled to start, and offers this with the understanding that Reynoso will reciprocate. This essentially

provides the defendant with the relief he requests, which is "Jencks material well before the jury is sworn." Consequently, the Court DENIES the motion as moot.

### III. Motion to Compel Impeachment Evidence.

Like his request for *Brady* material, the defendant does not present a dispute for the Court to resolve in this motion. The defendant wants "all evidence that would be admissible to attack the credibility of non-testifying co-conspirator declarants." He anticipates the Government will seek to admit statements by a coconspirator of a party during the course and in furtherance of the conspiracy pursuant to Fed.R. Evid. 801(d)(2)(E). He anticipates needing to attack the credibility of the out-of-court declarant.

According to the Government, the defendant has not filed a motion to disclose the identify of the informant, and if and when he does, the Government will respond at that time.

In support of his unspecific "motion for pretrial production of evidence admissible to attack the credibility of co-conspirator declarants not to be called as witnesses," the defendant attaches 6 exhibits, all discovery requests he made to the AUSA. And the exhibits demonstrate that much discovery was produced. Moreover, the discovery requests include those to which he has already requested compulsion in the Motion for *Brady* material.

The defendant has not specified what information he believes the Government has that he wants produced. Without a specific request and statement that it has been denied, there is no issue for the Court to resolve. The Court DENIES the motion to compel WITHOUT PREJUDICE.

### **CONCLUSION**

For the reasons discussed above, the Court DENIES the defendant's Motion to Dismiss/Request for Bill of Particulars [Docket No. 63], Motion for the Disclosure of Brady Materials and Early Production of Jencks Material [Docket No. 64] and Motion for Pretrial Production of Evidence Admissible to Attack the Credibility of Co-Conspirators

IT IS SO ORDERED.

December 16, 2008

*Saundra B Armstrong*

Saundra Brown Armstrong

United States District Judge

